IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TAIWAN D.,

        **Plaintiff,**

    v.

        Civil Action 2:21-cv-990
        Judge Sarah D. Morrison
        Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Taiwan D., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 10).  Plaintiff did not file a Reply but did file a Notice withdrawing his separation of powers argument, labeled as Issue III, in his Statement of Specific Errors.  (ECF No. 15.)  For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

I. BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on November 29, 2017, alleging that he has been disabled since January 1, 2016, due to a birth defect, esophagus complications, arthritis in all of his joints causing back, shoulder, hands, feet and ankle pain, scar tissue from prior surgeries, and severe depression. (R. at 278.) Plaintiff's applications were denied initially in April 2018 and upon reconsideration in November 2018. (R. at 132-208.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 211-25.) Plaintiff, who was represented by counsel, appeared and testified at a telephone hearing held on May 4, 2020. (R. at 94-131.) A Vocational Expert ("VE") also appeared and testified. (*Id.*) Administrative Law Judge Deborah F. Sanders (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act on June 26, 2020. (R. at 71-93.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) This matter is properly before this Court for review.

I. RELEVANT RECORD EVIDENCE

**A. Relevant Statements to the Agency and Hearing Testimony**

The ALJ summarized Plaintiff's relevant hearing testimony and statements made to the agency:

> [Plaintiff] testified he sees a mental health professional whom he had visited weekly, then biweekly, prior to a COVID related shutdown. He reported taking Citalopram for his mental health concerns but stated the medication is not really effective as he is still depressed. He indicates he zones out at times and that he is not really around a lot of people other than his family.

(Tr. 77).

> [Plaintiff] reported being unable to engage in work activity due to a combination of his physical and mental conditions (Exhibit 2E). [Plaintiff] testified that he is unable to work due to pain in his lower back, which radiates to his right buttock, as well as a history of a knee fracture and pain, and right shoulder pain due to an issue from birth. [Plaintiff] endorsed pain that drops him to his knees, approximately twice per week, and stated he is laid up in bed a couple of days per week. He indicated that his shoulder aches and limits his ability to lift, which has worsened with age. He reported experiencing hand cramps at times and has dropped items in the past. [Plaintiff] reported taking Ibuprofen and Naproxen for knee pain and has a history of physical therapy and chiropractic care. [Plaintiff] stated he needs help taking showers, does not use a shower chair, and uses an unprescribed stick/cane to walk around and stand. [Plaintiff] indicated he can stand for about 15-20 minutes, can walk for about 5-6 minutes, can sit for 10-15 minutes before needing to readjust, and can lift 5 pounds on the right side and about 8 pounds on the left.
>
> [Plaintiff] reported living with his fiancé, and that he cares for his children every other weekend. [Plaintiff] endorsed maintaining a driver's license, in addition to his barber's license, but that he has not been driving, instead getting rides from his parents and partner to get places. He indicated he continues to do barber work as his symptoms allow, but takes regular breaks. During the day, [Plaintiff] stated he tries to do his home exercises and stretches, uses an ice pack or muscle rubs for his back for pain, tries to watch television, and interacts with his emotional support dog. He reported he does not do any household chores and does not cook, leaving those duties to his fiancé.

(R. at 81-82.)

### B. Relevant Medical Records

The Undersigned has thoroughly reviewed the relevant medical records and function and disability reports as to Plaintiff's conditions and resulting limitations. Instead of summarizing that information here, the Undersigned will discuss it as necessary below.

## II. ADMINISTRATIVE DECISION

On July 1, 2020, the ALJ issued her decision. (R. at 71-93.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. (R.

3

at 76.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since January 1, 2016, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of right acromioclavicular (AC) joint arthrosis and degenerative disc disease of the thoracolumbar spine. (R. at 77.) The ALJ determined that Plaintiff's medically determinable mental impairment of adjustment disorder with depressed mood does not cause more than minimal limitation in his ability to perform basic mental work activities and is therefore nonsevere. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 80.).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: [Plaintiff] can occasionally push/pull with the right upper extremity; can frequently climb ramps and stairs, but never climb

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

>ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch, crawl; frequently reach overhead with the right upper extremity; must avoid walking on uneven surfaces like rocky or hilly terrain; and must avoid hazards including unprotected heights and heavy machinery.

(R. at 81.)

At step four of the sequential process, the ALJ determined that Plaintiff is capable of performing his past relevant work as a barber. (R. at 87.) Relying on the VE's testimony, the ALJ concluded at Step 5 that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as a routing clerk, injection mold machine tender and box ceiling inspector. (R. at 88.) She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since January 1, 2016. (*Id.*)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

In his Statement of Errors, Plaintiff asserts that the ALJ improperly classified Plaintiff's mental health impairment as non-severe. (ECF No. 11 at 7-11). Plaintiff also argues that the ALJ erred in her evaluation of Dr. Kuriakose's opinion. (*Id.* at 11-14). The Undersigned finds Plaintiff's first argument to be well-taken.[2]

### A. Step Two – Mental Impairments

Plaintiff contends that the ALJ failed to classify his mental health impairment, identified as adjustment disorder with depressed mood, as severe. By extension, Plaintiff argues that the ALJ gave no consideration to the potential impact that this impairment would have on his RFC. (ECF

---

[2]This finding obviates the need for in-depth analysis of Plaintiff's remaining assignment of error. Thus, the Undersigned need not, and does not, resolve the alternative basis that Plaintiff asserts supports reversal and remand. Nevertheless, on remand, the ALJ may consider it if appropriate.

No. 11 at 7-11).  The Commissioner asserts that the ALJ reasonably concluded that Plaintiff's mental impairment was not severe.

As a preliminary matter, to the extent that Plaintiff argues the ALJ committed reversible error by failing to recognize Plaintiff's mental impairment as severe at step two of the evaluation process, the Undersigned disagrees. As the Sixth Circuit and this Court have observed several times, step two of the evaluation process is merely meant to "screen out totally groundless claims," and it is well settled that where an ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two '[does] not constitute reversible error.' " *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))); *see also Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug. 11, 2020) ("Even assuming that the ALJ should have discussed plaintiff's alleged [impairment] at step two, any error from this omission was harmless. Step two is the means by which the Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.] ") (emphasis added; internal quotations and citations omitted).  Here, the ALJ found that Plaintiff had other severe impairments at step two of the evaluation process, and rightfully proceeded to the remaining steps of the disability determination.

That does not end the inquiry before the Court, however, because the ALJ must also consider both the severe **and non-severe** impairments in the remaining steps of the evaluation.  *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Under the regulations, once

the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps.") (citing 20 C.F.R. § 404.1545(e)); *see also White v. Comm'r of Soc. Sec.,* 312 F. App'x 779, 787 (6th Cir. 2009) ("[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe.")).

"When formulating an RFC, an ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alteration omitted) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are severe.")).

The ALJ must do so because

> [w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*May v. Comm'r of Soc. Sec.,* No. 2:19-CV-4479, 2020 WL 2059719, at *3–5 (S.D. Ohio Apr. 29, 2020), *report and recommendation adopted*, No. 2:19-CV-4479, 2020 WL 2494486 (S.D. Ohio May 14, 2020) (quoting *Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted)). Stated differently, "'an ALJ's conclusion that an

8

impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions.'" *Kochenour*, 2015 WL 9258609, at *6 (quoting *Patterson*, 2015 WL 5560121, at *4).  Indeed, a Step Two analysis is distinct from the ALJ's obligation to consider the impact of Plaintiff's non-severe impairments in addition to and in conjunction with Plaintiff's severe impairments in assessing Plaintiff's RFC. *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) (citing *Johnson v. Colvin,* No. 3:13cv00301, 2014 WL 6603376, at *8 (S.D. Ohio Nov.19, 2014) ("Assuming this [analysis] suffices to support the ALJ's conclusion that Plaintiff does not have a severe mental impairment, this does not demonstrate that the ALJ considered Plaintiff's non-severe mental impairments at step four as required by law.") *report and recommendation adopted,* No. 3:13cv00301, 2014 WL 7015188 (S.D. Ohio Dec.10, 2014).

The ALJ's Step Two analysis contains a fairly extensive discussion of the mental health evidence, including Plaintiff's testimony. (R. at 77-80.)   For example, the ALJ recounted Plaintiff's treatment notes from David Miller, Ph.D.  (R. at 77 citing R. at 470; 472-473; 476-480; 515-516; 486-687); the results of Plaintiff's psychological consultative evaluation with Sudir Dubey, Psy.D. (R. at 79-80 citing R. at 388-392); the reports from the State agency psychological consultants at both the initial and reconsideration levels (R. at 79 citing R. at 132-161; 164-193); and a questionnaire from Dr. Miller completed on January 22, 2020 (R. at 80 citing R at 483-487). The ALJ found persuasive the findings of Cindy Matyi, Ph.D., the State agency psychological consultant on reconsideration, that Plaintiff had mild limitations in all four functional areas of the "paragraph B" criteria (understanding, remembering or applying information; interacting with

others; concentrating, persisting or maintaining pace; and adapting or managing oneself). (R. at 79.) In doing so, the ALJ specifically found unpersuasive the findings of Courtney Zeune, Psy.D., the State agency psychological consultant at the initial level, that Plaintiff had no limitations in these areas. (*Id*.) The ALJ considered Dr. Dubey's evaluation persuasive to the extent it concluded Plaintiff had no severe mental impairment or limitations. (R. at 79-80.) She also determined that Dr. Miller's opinion was unpersuasive to the extent it found more restrictive functional limitations. (R. at 80.) Taking all of this into account, the ALJ concluded that Plaintiff had mild limitations in all four functional areas. (R. at 78-79.) Based on her conclusion of mild limitations, the ALJ found that Plaintiff's adjustment disorder with depressed mood was not a severe impairment. In completing her Step Two analysis, the ALJ found as follows:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(R. at 80.)

Aside from this detailed step two analysis and despite the ALJ's acknowledgment of her obligation, her only consideration of Plaintiff's mental health impairments in the RFC analysis was a reference to a questionnaire completed by Dr. Rosalie Kuriakose. The ALJ stated:

> Dr. Kuriakose also completed a questionnaire with respect to the claimant's mental functioning noting no limitation with respect to social interaction, moderate to marked limitations in the claimant's ability to sustain concentration and persistence, moderate limitation in the claimant's ability to respond appropriately to changes in a work setting due to physical pain, and moderate limitation in the claimant's ability to tolerate customary work pressures (Exhibit 11F, pages 4-6). The undersigned has not

>found these opinions persuasive as they are inconsistent with the evidence of record. … the undersigned has found no support for severe mental impairments, and Dr. Kuriakose's questionnaire does not provide any objective support necessitating a change in this regard.

This statement merely reaffirming her non-severity determination, a distinctly different issue, is not evidence that the ALJ properly considered Plaintiff's mental impairments in assessing his RFC. Further, to the extent the ALJ concluded that Plaintiff had mild functional limitations in all four relevant domains of the "B criteria" (R. at 78-79) no such limitations were included in the RFC.

Accordingly, remand is in order here. In reaching this conclusion, "the Court sides with those courts that have found that the 'ALJ's failure to adequately explain how an impairment affects an individual's RFC may constitute reversible error.'" *Bazzi v. Comm'r of Soc. Sec.*, No. 20-10963, 2021 WL 4167209, at *4–5 (E.D. Mich. Sept. 14, 2021) (quoting *Katona*, 2015 WL 871617, at *7 and concluding that "there [was] no real evidence, aside from citation to a single orthopedic consultation (to the exclusion of other mental health-related medical evidence such as medication), that the ALJ properly considered Plaintiff's mental impairments in assessing his RFC" such that remand was required); *see also May,* 2020 WL 2059719, at *3–5 (S.D. Ohio Apr. 29, 2020) (concluding that remand was required because, "after detailing the mental health evidence and concluding that Plaintiff does not suffer from severe mental health impairments, the ALJ concluded that her job was done with regard to Plaintiff's mental health.") (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190–91 (6th Cir. 2009) ("[O]nce it was determined that Simpson suffered from severe physical impairments, . . . the ALJ was required to consider the impairments resulting from this condition and her adjustment disorder with anxiety and depression

in assessing her RFC. Instead, the ALJ held that 'based on my evaluation of the claimant's mental impairment as not a severe impairment . . . she does not have any limitations stemming from that mental impairment.' The ALJ's finding is contrary to controlling law."); *James v. Comm'r of Soc. Sec.*, No. 1:19 CV 570, 2020 WL 836493, at *10 (N.D. Ohio Feb. 20, 2020) ("[A]n ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment constitutes reversible error where the ALJ makes no mention of these non-severe mental impairments in the RFC analysis."); *Workman v. Berryhill*, No. CV 7:16-261-DCR, 2017 WL 3880661, at *3 (E.D. Ky. Sept. 5, 2017) ("Although the non-severe determination of the claimant's mental impairment was not in error, the ALJ was still required to consider the limiting effects of all impairments, including limitations resulting from non-severe impairments, when determining [the] RFC."); *Kochenour*, 2015 WL 9258609, at *6 (remanding because "after the ALJ considered all of the evidence of record concerning Plaintiff's depression at step two, she went on to discuss only Plaintiff's physical impairments in her RFC analysis"); *Patterson*, 2015 WL 5560121, at *5 ("Yet [the ALJ's] RFC analysis focuses exclusively on Plaintiff's physical impairments, without any discussion of whether her non-severe mental impairments contribute, in any way, to an inability to perform substantial gainful work. Under these circumstances, the Court cannot conclude that the ALJ properly considered all of her impairments in accordance with SSR 96–8 p and remand is necessary."); *Garcia v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 805, 811 (S.D. Ohio 2015) (internal citation omitted) ("In other words, the ALJ found no limitations arising from Plaintiff's mental impairments simply because those impairments were not severe. Such conclusion is error because it conflates the distinct steps of the sequential review process and fails to reasonably explain the

absence of limitations arising from Plaintiff's mental impairments. This error is not harmless.")); *but see Zingale v. Kijakazi*, No. 1:20-CV-02197, 2022 WL 824148, at *12 (N.D. Ohio Mar. 18, 2022) (discussing that 20 C.F.R. § 404.1520a(d)(3) states that "if we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity" and concluding that the reasonable inference is that an ALJ may reasonably determine that non-severe mental limitations do not impact the RFC) (citing *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 WL 3587217 at *6 (S.D. Ohio Aug. 21, 2017) (agreeing with the Commissioner and finding that "[c]ontrary to Plaintiff's apparent contention, the ALJ's determination that she had some mild impairment does not require inclusion of mental limitations into the RFC.").

Of course, it may be that Plaintiff's non-severe mental health impairments, even when considered in combination with his severe physical impairments, do not require additional workplace restrictions. "But the ALJ's 'detailed analysis at step two does not relieve [her] of her duty to provide an explanation as to the holistic impact of all impairments, both severe and non-severe, specifically in relation to Plaintiff's RFC.'" *May*, 2020 WL 2059719, at *5 (quoting *Kochenour*, 2015 WL 9258609, at *6 (ordering remand despite "recogniz[ing] the depression was so minimally limiting that no mental restrictions should factor into the RFC").

Accordingly, upon remand, the ALJ should explicitly discuss Plaintiff's mild mental health limitations when crafting Plaintiff's RFC. If the resulting RFC incorporates mental restrictions, the ALJ must then determine whether Plaintiff can meet the demands of his prior job or the other jobs

in the national economy, despite his mental and physical limitations. *May,* 2020 WL 2059719, at *5.

## VI. CONCLUSION

For these reasons, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: May 3, 2022       /s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge